The next case is United States v. Carpenter, 2-4-2-9-1-4. Ms. Garst, whenever you're ready. May it please the Court, my name is Hannah Garst. I'm here today on behalf of defendant-appellant Joseph Carpenter. This case presents the question of whether the government proved beyond a reasonable doubt that Mr. Carpenter attempted to sexually exploit a child. Now here it's our contention that the government failed to prove that Mr. Carpenter took a substantial step or demonstrated specific intent to use, persuade, induce, entice, or coerce a minor to engage in sexually explicit activity for the purpose of creating a visual depiction. Now at trial the district court granted our Rule 29 motion at the end of the government's case and this was related to a child enticement charge. They found that, the court found that the government failed to prove that Mr. Carpenter persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct. Now that leaves several elements of the sexual exploitation charge including the use of a minor and also the purpose. The purpose of sexual exploitation must be production and that is part of the reason why sexual exploitation carries the increased mandatory minimum of 15 years versus a child enticement case which is 10 years. So there is the additional elements there. Again, sexual exploitation requires the production. That's the ultimate purpose. So the question before the court is, did Mr. Carpenter attempt to use Haley, the little girl, to engage in sexually explicit conduct to produce the visual depiction? Now the government put forward evidence in terms of chats. That was the only evidence that was provided to the court. And in these chats, it's our contention that attempt is not proven. First, Agent Garrity is the first to suggest taking pictures of Haley. Agent Garrity is the first to talk about taking pictures of Haley while she's sleeping. Agent Garrity suggests meeting up. Mr. Carpenter never takes him up on that. Agent Garrity states that he's going to take pictures of Haley and then in turn, Mr. Carpenter asks for a copy of those pictures. Mr. Carpenter never agrees to meet. He never directs. He never asks to convey any messages to the minor. He never specifically asks the minor to do anything in particular. But he does make suggestions on how to drug the minor and he said he doesn't direct, but he did talk about specific images he would like. Is that accurate? When he spoke about the Benadryl, it was in direct response to Agent Garrity saying he was going to take pictures. When Mr. Carpenter said you could give her Benadryl, Mr. Carpenter at that point had not asked for any pictures himself. Now later on, Agent Garrity continued to request from Mr. Carpenter, what is it that you want? What is it that you want? And in that case, Mr. Carpenter did respond that he wanted a picture of the child's genitalia. But again, it was always in response to Agent Garrity. At one point, Agent Garrity said, what is it that you want? Mr. Carpenter responded, anything you'll give me. Agent Garrity comes back and says, no, no, no, I need to know what is it that you want. He again says, anything that you're doing. I'm not picky. And the third try was when again he stated, I'd like a picture of her genitalia. But again, he was convicted of attempted receipt of child pornography. And there's no question here that he was trying to obtain the pictures, pictures that Agent Garrity himself was directing. Agent Garrity was saying that he was going to take the pictures. He was going to do these things to the daughter. And Mr. Carpenter was responding, I'd like a copy of those pictures. I want pictures. And that is why the jury found him guilty of the attempted receipt. Does it matter who mentions the pictures or taking the photos first? In other words, if the intermediary says, you know what? I'm thinking about taking some pictures. Do you want any? Or do you want me to take pictures? And the defendant answers, yes, I want you to take pictures. In your mind, is that enough for the 2251A count? We would suggest that, as in Hartle Road, the court said that you can have direct communication. No direct communication is required. However, the nature of the communication is important. And I think that the nature of the communication here is telling. Because if you look at the cases, the other 2251 cases, it's not that someone's saying I'm going to take pictures and I want them. It's saying what type of pictures that you want. In Hartle Road, he drafted a script. He sent the script. He made arrangements for the Skype meeting. He changed his work schedule to be present for that Skype meeting where he was intending to direct. So the nature of the communication, Judge Lee, I think is really important. And to just say I want pictures or I want a copy of pictures, there's no directing. There's nothing active there. There's nothing that's specifically showing how, even through the use of an intermediary, how is the defendant causing this minor to engage in sexually acts? What if the defendant says, you know what? I want you to take pictures of the child's genitalia. Can you do that? And the intermediary says, yes, I can. Is that enough? I think that if it's the defendant's idea in saying I want you to take pictures of X, I want it to look like this, I want 10 pictures, then according to the cases, that would be enough. But here our position is that the difference is that Mr. Carpenter is continually responding and in general stating I will take a picture of this. But in the chats, he's continually coming back and saying do you have pictures for me? And it is Agent Garrity who's saying I'm going to actively take these pictures. I'm going to do this. I'm going to do it while she's sleeping. Ms. Garst, though, I'm looking at Agent Garrity's testimony, and the photo discussion started with Mr. Carpenter, right? Mr. Carpenter. I'm looking at page 51 of Agent Garrity's testimony. I think we're losing some context here, which is he was talking about nudes of his three stepdaughters, and that's how photos came up. So he was sort of, one could say maybe mentoring. This is what I did, and that's how the interaction started, right? I mean, what do you do with that whole line of text? That preceded the agent's ask for the photos, or the agent's ask for what do you want. It didn't come out of thin air, right? This did not come out of thin air. There were chats that were going on, obscene chats discussing past alleged abuse that Mr. Carpenter had done with his stepdaughters. That's how it started. But the point that we're trying to make is that Agent Garrity was the first one to bring the 8-year-old Haley into the picture. It was Agent Garrity who then says, I'm going to take pictures of Haley, and I'm going to do it while she sleeps. And on that same day, Mr. Carpenter never asked for pictures. It was later in the chats that the whole thing is, I'd like the pictures that you take. I'd like a copy of those. That's when it came up. So I'm not trying to misrepresent in any way that there were these chats going on, but in order for it to be a production charge, a 2251A charge, the fact that they're producing that a defendant is asking to produce or attempting to produce images of that child matters versus some of the other ways that the government can charge these cases. If I might get your view on something with regard to these cases involving intermediaries. We see more and more of them. And in terms of attempt charges, does it matter whether or not the intermediary agrees to do it? So in other words, if you have an attempted exploitation or attempted use, and let's say the defendant reaches out to an intermediary and says, I'd like some pictures. Can you take pictures? And the intermediary says, no, I'm not going to do that. Is that still an attempt for violating 2251A? I'm just trying to understand kind of what, if any, relationship there needs to be between or agreement or assent between the defendant and an intermediary. I believe that if you just asked and the intermediary said no without giving more specifics, that that would be an expansion of 2251A and the intent of that. I mean, if you look at even at the child enticement cases where use of intermediary has been more written about, the defendant actually has to do something to affect the mind of the minor. So whether or not the intermediary says they're going to follow through or not, there has to be that step. And that's what this court has said in Baird. And for a sexual exploitation charge, you would expect, given that it carries a 15-year mandatory minimum, that there should be something to cause the actual production to show that, but for this just being an intermediary, that this would have actually happened. So I think in terms of what the intermediary says, that would be an expansion. I think it's more important to look at what the defendant is doing. What are they saying? How are they planning? How are they directing the actual production here, especially in terms of how this was charged? And what we're really talking about is the use of a minor. And use can be expansive, but the courts have kind of said, we can't just leave using a minor to be completely expansive. There was the case of Howard where there wasn't even a minor that was in the picture. And the court has said, no, that's not enough. The minor has to be in some way connected to this. So it would be our perspective that if there's an intermediary, that it's really important to look at the actions of the defendant and how the defendant has demonstrated that their intent to actually produce, if all goes as expected. So let's say the defendant, and this is just a thought exercise, let's say the defendant gave the intermediary a script and said these are the photos I want, these are types of poses, and the intermediary says, you know what, no, that's too far, I'm not going to do that. Would that action of sending the script to the intermediary, in your view, be sufficient to convict the defendant on an attempted exploitation charge? Yes, Your Honor, because it is, again, focused on the defendant and the defendant's intent, the defendant saying this is what I want to carry out, but for the intermediary not being there or being an undercover, that would have been successful. So under that test, yes. If I may save the rest of my time. Thank you, Your Honors. Thank you. Good morning, Mr. Simpson. Good morning, Your Honors. May it please the Court, I'm Scott Simpson on behalf of the United States. This Court said in the Hartle Road decision, I'm glad we have that decision here to help us in this case, requests to have a minor take and send pictures matching certain descriptions are sufficient to support specific intent to produce child pornography under Section 2251. And Hartle Road, of course, has been referred to, also said that direct communication with a minor is not necessary. And all of that is exactly what happened here. Now, true, there are some facts in Hartle Road that supported the finding there, the verdict there, that aren't in this case, but there are also facts in this case that were not in Hartle Road that further support the verdict here. And this case easily satisfies all those requirements. If I could just summarize the evidence here. Some of this has already been referred to. In his conversation with the agent, it was Carpenter who first brought up the subject. I believe, Judge Lee, I believe you referred to this earlier. In that conversation, it was Carpenter who first brought up the whole subject of producing sexually explicit images of minors, talking about his granddaughters. I believe that was Judge Malzahnado, actually, I think. When the agent then said he wanted to create sexually explicit images of his daughter while she was sleeping, who was it who first brought up medication? That was, again, Mr. Carpenter who raised the subject of medication. He suggested either Benadryl or melatonin, and then later he recommended Benadryl. And it was Carpenter, again, who suggested telling the minor that the melatonin gummies were candy. He suggested a specific communication to the minor. He actually advised a specific dosage of a specific product. The upshot of all of this, what we're seeing here, is that Mr. Carpenter was advising the agent, the supposed father, on how best to put his daughter in the best frame of mind, in the best mental state, to facilitate producing child pornography, that is, to make her unable to resist or object. And then Mr. Carpenter repeatedly asked for images of a specific part of the child's anatomy, as has been referred to, the genitalia. Now, I must disagree on one part of what counsel for the defense said. It's actually later on, later in the conversation, this conversation went on for quite a while, later in the conversation, yes, the agent asked a number of different times, what do you want, is there anything specific, but very early in the conversation, this is on page 15 of Government Exhibit 5 from the trial, the very first time, on page 15, the very first time when the agent says, anything special you're looking for, you want me to take, and right after that, in response to that, I won't use the term that Mr. Carpenter used, he said he wanted a picture of a specific part of the child's anatomy. Now, true, later on, the agent said again, anything specific you want, but right there, the very first time when the agent said, anything specific you want, Mr. Carpenter jumped in and said, yes, I want that part of her anatomy. And later on, he also said he wanted action shots. In addition to saying yes again and again, yes, I want a picture, pictures of that specific part of her anatomy. Mr. Carpenter suggested that the agent could progress from touching to kissing. At one point, the agent said, I might make it a game, and Mr. Carpenter specifically suggested the parameters of that game. Then he also even guided the father, the supposed father, the agent, in what not to include in the pictures, that is, be sure you don't include, and again, this is totally volunteered out of the blue from Mr. Carpenter without any prompting from the agent, make sure you don't include any pictures of your face or the daughter's face to protect yourselves. And Mr. Carpenter was very persistent, asking for sexually explicit images at least six different times and saying at least six other times, additional times, that he couldn't wait to see those pictures. And of course, all of this was in the concept in the midst of telling the agent very graphically about his own sexual activities with his stepdaughters, including creating sexually explicit images. And then it was Mr. Carpenter, and this is probably the main part of his overt act toward the attempt. It was Mr. Carpenter who suggested using Dropbox to transmit the images and sending his e-mail address for that purpose. I can't imagine how all of this could not constitute attempting to use a minor to engage in sexually explicit conduct to produce a visual depiction of that. Mr. Simpson, if I could ask you that fact scenario where a defendant reaches out to an intermediary and says, you know, can you take nude pictures of your minor child? And the intermediary says no. Is that request sufficient in your mind for conviction under attempted violation of 2251A? I think, Your Honor, I think it would depend on the circumstances, of course. And I think in looking at those circumstances, the court would focus on the verb use, use or employ in the statute. Let's pretend like there had been no indication during the conversation even that the recipient of that request had minor children, had minors available to him or her. Probably that would not be enough for a 2251 conviction. But, yes, I think the answer would be yes if, again, based on the circumstances, if they had discussed the recipient's minor children, yes, I think that probably would be enough. I think that would satisfy the specific intent. There would have to be some overt act for the attempt. Perhaps sending the requester's e-mail address would be enough for that. You wouldn't rely upon the request alone to be an overt act or substantial? That may well satisfy it, Your Honor, yes. We would certainly want more than that, ideally, but the request, depending on the circumstances of the conversation, that could well be enough to support the 2251. It seems like, and the reason I ask is because it seems like a very broad application of the word use. It would encompass, I think, a lot of cases. I'm wondering if there's any kind of limiting principle in your mind about use of that word. Well, Your Honor, if it's broad, it certainly is broader than 2422, the enticement. For whatever reason, it was Congress who put in those words use and employ in 2251. They're not found in the enticement statute. So to the extent it's broader, then it is Congress that made it broader. So, again, it would depend on the circumstances, but Congress made it broad, use and employ. Yes, those are broad words. If I could address the other claims, I don't know if the Court is interested in those. We have two other claims, a constructive amendment claim and the actual challenge to the jury instruction. There's a claim preservation issue on the constructive amendment claim. But now, having mentioned that, I should say the outcome would be the same, we believe, no matter what the standard of review would be. But the defense actually never made an objection to the jury instruction that they say constituted a constructive amendment. The closest they got was objecting to an earlier proposed jury instruction on the exploitation count, and they said that that doesn't mirror the indictment. That was the argument. And that, of course, I believe, would constitute a constructive amendment objection, that it doesn't mirror the indictment. But then that instruction that they gave, that they made that objection to, was never actually given. The government withdrew it, and the Court actually expressed reservations about it. But then the government proposed an instruction that basically stated the core of this Court's decision in Hartle Road, the core of the holding in Hartle Road. The earlier instruction talked about causing another person to use a minor to engage in sexually explicit conduct. That one was withdrawn. But then the whole point of the instruction that was actually used was that the communication can happen through an intermediary, kind of the core of the Hartle Road holding. The defense did object to that. The defense did object to that intermediary instruction, but they objected that it was not a pattern instruction, and they objected that the government in proposing it was citing a couple of decisions that were actually on 2422 instead of on 2251. So they did not actually make a mirroring the indictment objection to that instruction that was actually given. Besides, under any standard of review, there could be no successful constructive amendment claim on that instruction. The indictment itself simply tracked the statutory language, and again, this Court has said in Hartle Road that the communication can happen through a minor. That's just what the instruction said. So it was basically saying this is the statute, and the challenged instruction here was simply referring to what Hartle Road said was what that statute meant. You just mentioned standard of review, and I don't want to put words in your mouth that said under any standard of review. Your Rule 29 case law does seem somewhat distinguishable. Do you agree that we don't need to reach that issue? Your Honor, that's of course a different claim preservation issue. What I've been talking about is the claim preservation issue on the constructive amendment. This Court has said that the defense has to either make a Rule 29 objection at the close of all the evidence or file a Rule 29 motion after trial. Actually, the defense didn't do either of those here. But all your case law is distinguishable because here it was the functional close. There was no additional evidence. I'm not sure that's an issue we need to reach. I deliberately did not talk about that at the beginning because we've recognized that, and again, under any standard of review, the claims are without merit. So finally, Your Honors, just one minute on the final claim. The actual challenge to the jury instruction, also obviously without merit. That instruction simply stated what the holding was in Hartle Road, so it obviously stated the law correctly. So, Your Honors, unless there are any further questions, we would ask the Court to affirm. Thank you, Mr. Simpson. Ms. Garst, I'll give you three minutes. Thank you, Judge. Just on one point, you were talking about the expansiveness of the word uses. And going back to Howard, this Court noted that uses cannot just be expansive. The word uses in the statute must be construed in context with the other verbs that surround it. So to insinuate that Congress just expansively looked at 2251 and tried to make it larger than 2422, the child enticement, it would be our contention that that really doesn't encompass a reading of uses that doesn't make every case into a sexual exploitation case. The way these cases come up is often when you have an undercover agent soliciting, trying to find people that are looking for children. So under the government's definition, what they could do is say, hey, I have a child. Do you want pictures? The defendant then says yes. Then the undercover agent says, what do you want? Then the defendant says one thing. Under the government's definition, that's sexual exploitation. That's almost every case that comes before this Court. And it would be our contention that that would be overbroad for the intent of every person seeking child pornography is not a producer. They may be trying to obtain it, but that does not turn them into a producer. And for that reason is why we're saying there must be more. There must be more from the defendant to demonstrate both their intent and the substantial step. Unless there are additional questions. Thank you, Your Honor. Thank you. Thank you. The case will be taken under advisement. At this point, the Court will take a five-minute break.